IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSE R. MARTINEZ, et al., on their own behalf
and on behalf of all others similarly situated,

        Plaintiffs,

RALPH HERRICK, by his wife and next friend,
NELDA HERRICK,

        Petitioner/Movant,

   -vs-                                                                        Civ. No. 71-8990 LH/LFG

TOMMY G. THOMPSON, Secretary of Health and
Human Services, et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Ralph Herrick's Petition/Motion to Enforce the Judgment and for an Order Holding Defendants in Contempt (Docket No. 71), filed May 3, 2001 ("Petition"); Nelda Herrick's Motion for Substitution of Petitioner (Docket No. 96), filed June 9, 2003; and Defendants' Motion to Dismiss on Grounds of Mootness (Docket No. 98), filed June 26, 2003. The Court, having considered the Petition and Motions, the memoranda of the parties, and the applicable law, and otherwise being fully advised, finds that Defendants' Motion to Dismiss on Grounds of Mootness is well taken and will be **granted**, the Motion for Substitution of Petitioner will be **denied as futile**, and the Petition will be **dismissed** for lack of jurisdiction.

As described by the Tenth Circuit in 1989, on the last appeal of this matter:

> This case began in 1971 when the original plaintiffs[1] sought an injunction requiring appellants[2] to provide hearings to Medicare home health patients before cutting off their benefits. On remand from this court, the district court issued an order in 1973 enjoining appellants from terminating home health care benefits to the individual plaintiffs and "to all those Medicare beneficiaries similarly situated without first providing an evidentiary hearing on the merits of their terminations." Order of April 23, 1973, at 4.
>
> In 1986, appellees[3] initiated the present enforcement proceedings, asking the district court to require appellants[4] to comply with the 1973 order or be held in contempt. In response, appellants argued that because of an intervening change in the law they should be relieved of any obligations under the 1973 injunction. On October 14, 1986, the district court found that appellants had failed to comply with the 1973 order and that no change of law requiring relief from the order had occurred. The court ordered appellants to submit a plan for implementing the 1973 order. [*Martinez v. Bowen*,] 655 F. Supp. 95 [(D.N.M. 1986)].
>
> On May 1, 1987, after considering proposals from the parties, the district court issued an order setting forth a detailed implementation plan (. . . the Remedial Order).

*Martinez v. Sullivan*, 874 F.2d 751, 752 (1989) (footnotes added) (dismissed for lack of appellate jurisdiction).

---

[1] The original Plaintiffs were Jose R.E. Martinez, Esquipula Baca, Tranquilino Manzanares, and Hilario Aguilar, on their own behalf and on behalf of all others similarly situated.

[2] The original Defendants were Elliot L. Richardson, individually and as the Secretary of the United States Department of Health, Education and Welfare; Robert Ball, individually and as the administrator of the Social Security Administration of the United States Department of Health, Education and Welfare; and Blue Cross Association of New Mexico ("Blue Cross").

[3] The Plaintiffs-Appellees in 1986 were James Lannom, Julian Garcia, Lillie Hogue, Danny Carpenter, and Nancy Cox.

[4] The Defendants-Appellants in 1986 were Lewis Sullivan, M.D., individually, and as Secretary of the United States Department of Health and Human Services, and Blue Cross.

In the Remedial Order of May 1, 1987, Judge Mechem again held that the Intermediary contracted by the Health Care Finance Administration ("HCFA")[5] to determine and make Medicare payments for services rendered in New Mexico must give beneficiaries receiving home health services pursuant to a plan of treatment the opportunity for an in-person evidentiary hearing before denying those services. Additionally, pending the hearing, the Intermediary must process and pay the disputed claim in accordance with normal procedures and aggregate with it any subsequent claims for related home health services.

On May 3, 2001, Ralph Herrick filed the Petition currently before the Court. In the Petition he claimed, as a New Mexico Medicare recipient receiving home health services, to be among those beneficiaries similarly situated to the original Plaintiffs in this matter and, therefore, to have standing to seek enforcement of the Court's prior orders. He charged that Defendants[6] were not in compliance with those orders because they terminated his benefits without giving him the opportunity of an in-person evidentiary hearing and that their written policy explicitly precluded the opportunity for such hearing and denied the right to any pre-termination evidentiary hearing in instances of "technical"[7] denials. Accordingly, Mr. Herrick sought the following relief: 1) that Defendants be held in contempt, 2) that all benefits previously terminated and withheld pending resolution of his requests for administrative relief be immediately paid to him, 3) that the Court's

---

[5] At the time of the Remedial Order the Intermediary was New Mexico Blue Cross Blue Shield, Inc., and the HCFA was the agency responsible for administering Medicare.

[6] Pursuant to FED. R. CIV. P. 25(d), Tommy G. Thompson, as a federal official, replaces the previously named Secretary of the Department of Health and Human Services.

[7] A "technical denial" is based on a non-medical reason, such as the absence of certain documentation, while a "medical denial" is based on the determination that the services are not medically necessary or are not covered by Medicare.

3

prior orders, including the May 1, 1987, Remedial Order, be enforced, 4) that time limits for holding and resolving in-person evidentiary hearings be imposed, and 5) that a monitoring mechanism be imposed to insure Defendants' compliance with the Court's orders in the future.

Defendants responded in opposition to the Petition on July 2, 2001, stating that they always "substantially complied" with the Court's Remedial Order, for instance, by using the notice of preliminary denial required by the Remedial Order, by paying claims of New Mexico home health services beneficiaries pending the outcome of challenges to preliminary denials,[8] and by following the same procedures for "medical" and "technical" preliminary denials. Additionally, Defendants assert that when their current fiscal intermediary, Palmetto GBA of Columbia, South Carolina ("Palmetto"),[9] was notified of its error, it voluntarily revised its procedures in January 2001 to comply with the Remedial Order for those instances when a New Mexico beneficiary requests an in-person hearing. Thus, Defendants maintain that they are in full compliance with the Remedial Order and were so before Mr. Herrick filed his Petition. Defendants also maintain that Petitioner has received all of the relief that he seeks in relation to his individual claims for home health services. Thus, Defendants conclude that a finding of contempt would be unwarranted and that the relief sought by Petitioner, both his individual claims and the proposed systemic changes, is unnecessary. Finally, Defendants argue that the Petition should be dismissed on grounds that Petitioner failed to comply

---

[8] Following termination of Mr. Herrick's Medicare benefits for home health care services, the Herricks paid the home health agency directly when it billed them for the continuation of services, although, unknown to the Herricks, Medicare apparently also paid the provider for those services.

[9] Palmetto has been the fiscal intermediary for Medicare home health services provided in New Mexico since December 1995. It is one of only four intermediaries nationwide, servicing sixteen states. In the other states, a beneficiary seeking review of an initial determination denying home health services is entitled only to a record review without a hearing. New Mexico is the only state requiring an in-person, evidentiary hearing at the intermediary level.

with D.N.M.LR-Civ. 7.3(b)(2)[10] by not notifying Defendants of his objections before filing the Petition.

On July 25, 2001, Defendants filed their Notice of Administrative Action, informing the Court that the hearing officer's decision regarding Petitioner's claim for home health services, attached as Exhibit A, was issued on July 5, 2001. According to the hearing officer's report, an in-person hearing was held at the Herricks' home on June 21, 2001, and the resulting decision was favorable to Petitioner.

After taking the depositions of five Palmetto employees and two HCFA employees, Petitioner filed his Reply Memorandum on February 13, 2002. Petitioner now identified the "critical point" for the case as not that Palmetto employees failed to comply with the Remedial Order, but that the Centers for Medicare and Medicaid Services ("CMS"),[11] as the responsible federal agency, did nothing to monitor, direct, or correct the situation after Palmetto took over the contract from Blue Cross in December 1995. He also argued that the Petition should not be dismissed for the "technicality" of noncompliance with Local Rule 7.3(b)(2) and that the significant issue of noncompliance with the in-person hearing requirement could not be negated by Palmetto's after-the-fact actions. Thus, given the alleged past failures by both Palmetto and CMS, Petitioner requested relief to ensure that CMS, in particular, would not fail in the future. This relief included that the Secretary be held in contempt and subject to the following remedial obligations: 1) notification in

---

[10] At the time Defendants filed their opposition brief, the Local Rules provided, "Determining Opposition. Movant must determine whether a [post-judgment] motion is opposed." D.N.M.LR-Civ. 7.3(b)(2) (effective July 31, 2001). The Motion Practice rule currently provides that "Movant must determine whether a motion is opposed." D.N.M.LR-Civ. 7.1(a) (effective July 1, 2002).

[11] HCFA changed its name to CMS in June 2001.

writing of all recipients of Medicare home health care in New Mexico of their *Martinez* appeal rights; 2) application of the original request for a demand bill seeking decision by the intermediary on a challenge to a determination of non-coverage by the home health agency to successive non-coverage holdings on the same grounds by the home health agency; 3) imposition of time frames for the submission of demand bills by home health agencies, for the submission of records to the intermediary by the home health agency, and for the intermediary to make and send notice of its initial determination and to assign a hearing officer; 4) maintenance of the Court's orders and the intermediary's implementing procedures, along with the names of the responsible CMS and intermediary staff, at a specific location; 5) maintenance of a log of evidentiary hearings, copies of which must be made available to any New Mexico Medicare home health beneficiary or his or her representative on written request; 6) quarterly monitoring by CMS of the intermediary's compliance, submission of a report of the results and copies of the hearing log to Petitioner's counsel, and inclusion of monitoring for compliance in CMS's annual Contractor Performance Evaluation Program; and 7) establishment of an education program for home health agencies in New Mexico and for beneficiaries, including distribution of official policy provisions in large-type notifications in home health agency association newsletters and e-mail updates and "Alert" flyers to beneficiary information and counseling offices and specific discussion of the *Martinez* requirements at annual "REACH" meetings.

  Defendants filed their Surreply on March 15, 2002, again arguing that the Court should not reach the merits because of Petitioner's failure to consult with Defendants before filing the Petition, as required by the Local Rules. Defendants also contend that if the Court does reach the merits of the Petition, it should be denied, as they already are in full compliance with the Court's orders and

the measures they have adopted ensure continuing compliance. Finally, if the Court were to grant any relief, Defendants maintain that it should be much less broad than that sought by Petitioner, particularly because Petitioner's legitimate interest in this matter, and therefore his counsels', will end at some point.

By letter dated June 10, 2002, Judge Mechem informed the parties of his conclusion that this matter needed to be heard so that the facts could be determined before a ruling was made, but that he was unable to hold an evidentiary hearing because of his age. Therefore, he requested that the parties consult and agree among themselves whether to proceed before a Magistrate Judge, who could conduct the hearing and order the entry of judgment or make recommended findings upon which Judge Mechem could enter judgment; whether to proceed before a visiting District Court Judge; or whether to have the case transferred to another District Court Judge in this district. The parties were unable to agree on a course of action and so notified the Court by letters dated June 27, 2002. No further activity took place until February 21, 2003, when this case was reassigned to Judge Hansen following Judge Mechem's death.

On March 13, 2003, Petitioner's counsel filed their Suggestion of Death of Petitioner/Movant Ralph Herrick, informing the Court that Mr. Herrick died on February 8, 2003. Nelda Herrick filed her Motion for Substitution of Petitioner on June 9, 2003, requesting that she be substituted as Petitioner under FED. R. CIV. P. 25(a)(1). Mrs. Herrick contends that in her capacity as Personal Representative of the Estate of Ralph Herrick, she is a proper substitute party under the Rule. She also maintains that the current enforcement action survives the death of Ralph Herrick because the laws upon which it is based are remedial, *see, e.g., Smith v. Dep't of Human Servs*, 876 F.2d 832, 834 (10th Cir. 1989), and/or because, as conceptually identical to both a *Bivens* action and a Section 1983

7

action, it would survive under the New Mexico abatement statute,[12] *see Grandbouche v. Clancy*, 825 F.2d 1463 (10th Cir. 1987). Mrs. Herrick further argues that the law and history of this matter, an enforcement action brought to ensure future compliance by Defendants with the Court's orders for the benefit of all other similarly situated Medicare beneficiaries, and its procedural posture of being ready for final hearing support substitution.

Defendants responded by filing their Motion to Dismiss on Grounds of Mootness on June 26, 2003, arguing that Petitioner's death has mooted his claim for the various measures sought to ensure future enforcement, thereby "extinguishing" his claim, and that substitution by Mrs. Herrick would be futile and should be denied pursuant to the Court's exercise of its discretion. *See* FED. R. CIV. P. 25(a)(1) ("If a party dies and the claim is not thereby *extinguished*, the court *may* order substitution of the proper parties."). The Court agrees.

Pursuant to Article III of the Constitution, federal "Judicial Power," that is, federal court jurisdiction, is limited to "Cases" and "Controversies." *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980). Thus, "[t]he constitutional power of federal courts cannot be defined, and indeed has no substance, without reference to the necessity to adjudge the legal rights of litigants in actual controversies." *Valley Forge Christian Coll. v. Americans United for Separation of Church*

---

[12]  The New Mexico statute provides:

> No action pending in any court shall abate by the death of either, or both, of the parties thereto, except an action for libel, slander, malicious prosecution, assault or assault and battery, for a nuisance or against a justice of the peace [magistrate] for misconduct in office, which shall abate by the death of the defendant.

N.M. STAT. ANN. § 37-2-4 (Repl. Pamp. 1990)(alteration in original).

*and State, Inc.*, 454 U.S. 464, 471 (1982)(quoting *Liverpool S.S. Co. v. Comm'rs of Emigration*, 113 U.S. 33, 39 (1885)).  The "case-or-controversy limitation" serves two complementary purposes:

> [i]t limits the business of federal courts to "questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process," and it defines the "role assigned to the judiciary in a tripartite allocation of power to assure that the federal courts will not intrude into areas committed to the other branches of government."

*Geraghty*, 445 U.S. at 396 (quoting *Flast v. Cohen*, 393 U.S. 83, 95 (1968)).

"As an incident to the elaboration of this bedrock constitutional requirement, [the Supreme Court] has always required that a litigant have 'standing' to challenge the action sought to be adjudicated in the lawsuit."  *Valley Forge*, 454 U.S. at 471.  While standing "subsumes a blend of constitutional requirements and prudential considerations," *id.* (quoting *Warth v. Seldin*, 422 U.S. 490 (1975)),

> at an irreducible minimum, Art. III requires the party who invokes the court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 . . . (1979), and that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision," *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38, 41 . . . (1976).

*Id.* at 472.

"Mootness" has been defined as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)."  *Geraghty*, 445 U.S. at 397 (quoting Monaghan, *Constitutional Adjudication: The Who and When*, 82 YALE L.J. 1363, 1384 (1973)).  Like the case-or-controversy limitation, mootness also "has two aspects: 'when the issues presented are no longer

9

'live' or the parties lack a legally cognizable interest in the outcome.'" *Geraghty*, 445 U.S. at 396 (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).

This Court unquestionably has the inherent authority to enforce its injunctions and previously has done so in this matter. It cannot and will not do so *sua sponte*, however; not only must any enforcement proceeding be brought by a Plaintiff/Petitioner with standing to do so, but the controversy at issue between the parties must continue throughout the litigation.

Defendants contend, Petitioner does not deny, and the Court finds that the only issues remaining regarding the Petition currently before the Court concern prospective injunctive relief requested by Petitioner. While it is uncontested that Petitioner, as a New Mexico recipient of home health benefits, had standing to bring the Petition, his death moots his claim for various measures to assure future enforcement, as neither he nor his estate could benefit from this relief. This event likewise negates the "capable of repetition, yet evading review" exception to mootness, as no claim can arise again with respect to him. *See, e.g., Geraghty*, 445 U.S. at 398 ("capable of repetition, yet evading review" doctrine applied where named plaintiff does have personal stake at outset of lawsuit, "and where claim may arise again with respect to *that* plaintiff") (emphasis added). Substitution of Mrs. Herrick therefore would be futile. Furthermore, Mrs. Herrick has no legally cognizable personal stake in this matter and so lacks standing in her own right.

Plaintiff argues, and the Court agrees, that the past orders of the Court are enforceable by any "similarly situated person." The obvious problem, however, is that there currently is no similarly situated person before the Court. Neither is this a class action, substantively, or in any other respect;

10

this issue was long ago decided and is the law of this case.[13] Thus, there are no class members, even putative, who might maintain the Art. III case or controversy requirement in the face of Petitioner's mooted claim. *Cf. id.* at 397, 402-04 (action brought on behalf of class not moot upon expiration of named plaintiff's substantive claim, even though class certification denied; if appeal results in reversal of class certification denial and class subsequently is properly certified, merits of class claim may be adjudicated). That Petitioner had standing to pursue his claims when he brought them says nothing about the issue of whether there presently is an actual controversy. There is not.

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss on Grounds of Mootness (Docket No. 98), filed June 26, 2003, is **GRANTED**.

**IT IS FURTHER ORDERED** that Nelda Herrick's Motion for Substitution of Petitioner (Docket No. 96), filed June 9, 2003, **DENIED AS FUTILE**.

**IT IS FURTHER ORDERED** that the Petition/Motion to Enforce the Judgment and for an Order Holding Defendants in Contempt (Docket No. 71), filed May 3, 2001, is **DISMISSED FOR LACK OF JURISDICTION**.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**

---

[13] *Martinez v. Richardson*, 472 F.2d 1121, 1122, 1127 (10th Cir. 1973) ("The court also ruled out a class action under Rule 23(a) and (b)(2). . . . [A]s we view it, a class action was not demanded here because the same relief could be afforded without its use and seemingly the court had something of this kind in mind when it provided in paragraph 6 of its findings for further enforcement action if the same should become necessary. . . . [T]he trial court should fashion an appropriate decree or order so as to make certain that there will be future compliance with the law in order that persons in the dire straits which these plaintiffs were in are not cut off without a hearing.")